UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                CASE NO. 1:23cr00009-001-AW

MATTHEW QUION ANTONIO LINDSEY
_____/

DEFENDANT'S MOTION TO DISMISS COUNT THREE
OF THE INDICTMENT

18 U.S.C. § 922(g)(1) makes it unlawful for any person who has been convicted in any court of a felony to possess a firearm. That statute violates the Second Amendment of the United States Constitution both facially and as applied in this case. Consequently, Mr. Lindsey moves to dismiss Count Three of the Indictment, ECF No. 1.

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), the Supreme Court held that regulations governing conduct falling within the Second Amendment's plain text are "presumptively" unconstitutional unless the government can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. The Supreme Court then established a two-step analysis governing Second Amendment cases: (1) if the "Second Amendment's plain text covers an individual's conduct," then "the

Constitution presumptively protects that conduct" *Id.*; and, (2), to rebut this presumption, the burden is on the government to show that a challenged law "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The test for historical consistency is demanding: "a firearm regulation is consistent with American tradition only if similar regulations were widespread and commonly accepted in the founding era, when the Second Amendment was adopted." *Id.* at 2137.

18 U.S.C. § 922(g)(1) does not meet the standard set by the Supreme Court in *Bruen*. The Second Amendment protects the precise conduct for which Mr. Lindsey is charged in Count Three. Further, the government cannot meet its burden of demonstrating consistency with traditional firearm regulations. Finally, in light of *Bruen*, the Eleventh Circuit's decision in *United States v. Rozier*, 598 F.3d 768 (2010) upholding the constitutionality of 18 U.S.C. § 922(g)(1), has been abrogated by the Supreme Court and is, therefore, no longer binding precedent. As such, this Honorable Court should declare 18 U.S.C. § 922(g)(1) unconstitutional, both facially and as applied in this case, and dismiss Count Three against Mr. Lindsey.

**I.    The Second Amendment's plain text covers Mr. Lindsey's charged conduct.**

The first part of the *Bruen* analysis is a determination as to whether the Second Amendment protects the conduct being regulated. *Bruen*, 142 S.Ct. at 2126. The

Second Amendment provides, "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. Count Three charges the conduct of possession of firearm and ammunition. Both "keep" and "bear" have been held to protect the right to possess firearms. *District of Columbia v. Heller*, 554 U.S. 570, 576-584 (2008) Further, arms applies to all bearable firearms and ammunition, not just those that were in existence at the writing of the Second Amendment. *Id.* at 582 ("The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.").

Although *Bruen* only specifically requires an analysis of the conduct being regulated, Mr. Lindsey is also clearly considered part of "the people" for purposes of the Second Amendment. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court found that "the people" protected by the Second Amendment were "all Americans." *Id.* at 580-581. As then Judge Barrett noted in 2019, "[n]either felons nor the mentally ill are categorically excluded from our national community." *Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019)(Barrett, J., dissenting). The Eleventh Circuit has observed that even "dangerous felons and those suffering from mental illness" are "indisputably part of 'the people.'" *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022), *abrogated on other grounds by Bruen*.

As Mr. Lindsey is part of "the people" and 18 U.S.C. § 922(g)(1) directly proscribes his right to keep and bear arms, the plain text of the Second Amendment protects the charged conduct.

### II. The government cannot satisfy its burden to demonstrate that permanently barring felons from possessing firearms is part of the historical tradition of America.

While the government is entitled to the opportunity to demonstrate that barring felons from possessing firearms and ammunition is consistent with America's historical tradition of firearm regulation, it will be unable to do so.

A tradition of regulation requires historical practice so "well-established" and "widespread" that a court can say with confidence that the regulated conduct falls outside "the pre-existing right codified in the Second Amendment." *Bruen*, 142 S. Ct. at 2133, 2137, 2135. The Supreme Court did not establish a threshold for determining when a historical practice rises to the level of a tradition, however, the Court did say that "a single law in a single State" is not enough and expressed "doubt that *three* colonial regulations could suffice." *Id.* at 2153, 2142 (emphasis in original). "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S.Ct. at 2131.

The government must identify a historical regulation that is "relevantly similar" to the one in question, both in terms of "how and why the regulations burden [one's] right to armed self-defense." *Id.* at 2133.

Felons existed in the 18th Century, as they do now. However, "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019)(J. Barrett dissenting); *see, e.g., id.* at 453-64 (surveying history); *see also, Range v. Attorney General of the United States*, 69 F.4th 96 (3rd Cir. 2023)("The Government's attempt to identify older historical analogues also fails."). Numerous scholars, too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." Carlton F.W. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1374 (2009); *see also*, Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J. L. & Pub. Pol'y 695, 708 (2009)("Though recognizing the hazard of trying to prove a negative, one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I.").

Other attempts to provide historical support required to uphold felon disarmament also fail.[1] As then-Judge Barrett discussed in her dissent in *Kanter*, proposals made in the New Hampshire, Massachusetts, and Pennsylvania Constitutional ratifying conventions do not support a ban on felon firearm possession. *Kanter*, 919 F.3d at 453-64. First, none of the proposals became law. *See United States v. Rahimi*, 61 F.4th 443, 457 (5th Cir.), cert. granted, 143 S. Ct. 2688 (2023). Further, "[t]he concern common to all three…is not about felons in particular or even criminals in general; it is about threatened violence and the risk of public injury." *Kanter*, 919 F.3d at 456 (Barrett, J., dissent). Likewise, the government's attempt to disarm felons "is not 'relevantly similar' to earlier statutes allowing for execution or forfeiture." *See, Range*, 69 F.4th at 105. "History does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons." *Kanter*, 919 F.3d at 464 (Barrett, J., dissent).

The Federal Firearms Act of 1938 is the earliest version of the current statute at issue, 18 U.S.C. § 922(g)(1), and, at the time of its enactment, applied only to those convicted of crimes of violence. Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938). The current statute was enacted in 1961. Pub. L. No. 87-342, 75 Stat.

---

[1] The defense has tried to anticipate some government justifications for the statutory infringement, but requests the right to address the government's specific historical justifications in a Reply Brief.

757 (1961). Neither qualify as "long-standing" nor do they have a historical analogue from the time of the enactment of the Second Amendment.

Unless the government can identify founding-era laws that imposed similarly broad and punitive burdens on Americans' Second Amendment rights, 18 U.S.C. § 922(g)(1) is facially unconstitutional under *Bruen*. Alternatively, assuming arguendo, that it is facially constitutional, it is unconstitutional as applied to Mr. Lindsey because the government cannot carry its burden of showing a historical tradition of permanently disarming people like Mr. Lindsey.

### III. The Eleventh Circuit's prior holding in *United States v. Rozier* is not binding because it either conflicts with *Bruen* or does not apply.

In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), the Eleventh Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1). However, the standard applied by the Eleventh Circuit is irreconcilable with the Second Amendment test established in *Bruen*. Alternatively, *Rozier* did not address the issue presented in this case and therefore, the prior precedent rule does not apply.

Under the Eleventh Circuit's prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." I*n re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)). And the Eleventh Circuit has

7

"categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." *Id.* However, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 45 S.Ct. 148 (1925); *see also, e.g., United States v. Edwards*, 997 F.3d 1115, 1120 (11th Cir. 2021) ("[W]e weren't confronted with the question we face today ... and so, of course, we had no occasion to resolve it.").

This Court should not follow *Rozier* for one of the following reasons: (1) *Bruen* has overruled or undermined *Rozier* to the point of abrogation because *Rozier's* Second Amendment test conflicts directly with *Bruen's* Second Amendment test; or (2) *Rozier* is not applicable precedent because this case raises issues that were neither brought to the attention of nor ruled upon by the Eleventh Circuit in *Rozier*. *See, eg., United States v. DiFalco*, 837 F.3d 1207, 1218 (11th Cir. 2016)("It is clear that the Supreme Court's holdings…and their rationale have undermined to the point of abrogation our prior holdings…"); and, *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)("Here, where the Supreme Court has clearly set forth a new standard to evaluate which crimes constitute 'violent felonies' and 'crimes of violence', our prior panel precedent has been undermined to the point of abrogation.").

8

In holding 18 U.S.C. § 922(g)(1) constitutional, *Rozier* set out the test in the Eleventh Circuit:

> [T]he first question to be asked… is whether one is qualified to possess a firearm. In Rozier's case, the most relevant modifier, as to the question of qualification, is "felon." Prior to taking into account Rozier's purpose for possessing the handgun, we must determine whether he is qualified to possess a handgun. Rozier's Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen, such as the appellant in Heller.

*Rozier*, 598 F.3d at 770-771. This directly conflicts with the *Bruen* test. Under *Bruen*, the text of the Second Amendment controls. If the plain text protects the prohibited conduct, the challenged statute is presumptively unconstitutional unless the government can justify the infringement by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. The Supreme Court does not differentiate between the "qualified" and "non-qualified," rather, it instructs courts to determine whether the statute impacts <u>conduct</u> protected by the Second Amendment. Consequently, *Rozier* has been overruled or undermined to the point of abrogation because "[t]here is no way to reconcile" the *Rozier* test of determining whether someone is a qualified person with the *Bruen* test which focuses on whether the conduct is protected by the text of the Second Amendment.

9

Alternatively, if *Rozier* and *Bruen* are not in conflict, then *Rozier* did not address the issue presented in this case. In *Rozier*, the defendant presented the issue of whether the Second Amendment protected his activity because he possessed a gun for self-defense purposes in the home. *Rozier*, 598 F.3d at 770. Here, however, Mr. Lindsey's case raises a different issue, that is, whether the Second Amendment protects his conduct because prohibiting felons from possessing firearms and ammunition violates the plain text of the Second Amendment and is not part of the historical tradition of firearm regulation in America. *Bruen*, 142 S.Ct. at 2127. Thus, the prior panel precedent rule of the Eleventh Circuit does not apply.

WHEREFORE, Mr. Lindsey respectfully requests that this Court dismiss Count Three of the indictment.

Respectfully submitted,

JOSEPH F. DEBELDER
FEDERAL PUBLIC DEFENDER

By: *s/ Darren Johnson*

Darren J. Johnson
Assistant Federal Public Defender
New York Bar No. 4056800
101 S. E. 2nd Place, Suite 112
Gainesville, FL 32601
(352) 373-5823

**CERTIFICATE OF SERVICE AND WORD COUNT**

I hereby certify that a copy of the foregoing has been furnished via ECF to Assistant United States Attorney David Byron this 12th day of October, 2023. This motion contains 2,236 words.

/s/ *Darren J. Johnnson*
Darren J. Johnson